WILLIAM MASON vs. LEWIS E. FIELD.

Bristol. Oct. 28, 1875. — March 2, 1876. MORTON & LORD, JJ., absent.

A., owning a building abutting upon lands owned severally by B. and C., made sep-
arate contracts with them conveying to each a part of his wall, with permission to
build upon it as high as their buildings should require. B.'s and C.'s buildings
were substantially one. B. agreed so to provide for carrying off the water from
the roof of A.'s building where it abutted against his own, as to prevent any leak-
age in A.'s building. The contract with C. contained a similar stipulation on his
part. *Held*, that B.'s agreement applied only to leakage in that part of A.'s roof
that abutted on B.'s building; and, that part being properly constructed, that he
was not liable for imperfection in the roof against C.'s part of the building.

A. and B., owning contiguous land and buildings, made a contract with regard to a
building to be erected on B.'s land, wherein B. stipulated to remove the eaves and
jet of A.'s building, and make good the roof, after removing the same where his
building rose above A.'s wall, "in a thorough and workmanlike manner, without
injury to the appearance or utility of the rest of the building, and provide in the
most effectual manner, by a gutter, valley, flashing or otherwise, to permanently
receive and carry off the water from the roof of A.'s building." B. made a new
roof to a part of A.'s building for the purpose. *Held*, that he was justified in so
doing under his contract, if that was the best method of carrying off the water, or
as good as any other; and that this question was properly submitted to the jury.

A. and B., owners of adjacent lands and buildings, made a contract whereby B.
agreed to make certain alterations in the roof of A.'s building where it abutted
upon B. In an action by A. for a breach of this contract, he joined counts in tort,
averring that they were for the same cause of action. *Held*, that under these
counts A. could not show acts of B. done in regard to portions of A.'s roof not
abutting on B.

CONTRACT for breach of a written agreement, with counts in
tort, averred to be for the same cause of action. At the trial in
the Superior Court, before *Aldrich*, J., the jury returned a ver-
dict for the defendant, and the plaintiff alleged exceptions, the
substance of which appears in the opinion of the court.

*C. A. Reed*, for the plaintiff.

*G. Marston*, for the defendant.

ENDICOTT, J. The plaintiff owned a building called Templar
Hall, which was bounded on its eastern side fifty-three feet by
land of Richmond, twenty feet by land of the defendant, and
again twenty-five feet by land of Richmond; Richmond thus
owning the northern and southern end of the adjoining land,
and the defendant the intervening twenty feet. The defend-
ant, intending to build on his twenty feet, entered into a con-

tract with the plaintiff, which is the subject matter of this suit. By this contract the plaintiff conveyed to the defendant one undivided half part of the eastern wall of Templar Hall, from the ground to the roof, abutting on the twenty feet owned by the defendant. The contract contemplated the erection of a building by the defendant higher than the eastern wall of Templar Hall, and authorizes the defendant to build the wall as much higher as necessary for the completion of his building. And it provides that the defendant shall "remove the eaves and jet of said Templar Hall Building, and make good the roof after removing the same, where his proposed building rises above the present wall, in a thorough and workmanlike manner, without injury to the appearance or utility of the rest of the building; and provide in the most effectual manner, by a gutter, valley, flashing or otherwise, to permanently receive and carry off the water from the roof of the Templar Hall Building, where it abuts against his said building, so as to prevent any leakage in said Templar Hall Building by reason of rain, accumulation of snow, ice or otherwise, during the work and afterwards."

The intent of the parties in making this provision was evidently to prevent leakage in that part of the roof of Templar Hall which would abut against the proposed building of the defendant, and this is confirmed by other facts which appear in the bill of exceptions. The plaintiff had an agreement with Richmond like the one made with the defendant; from which it is to be inferred that both of them intended to build substantially one building, under similar agreements in relation to the work to be done on the land of each where it abutted against Templar Hall. It also appears that Richmond and the defendant erected the building against Templar Hall, but it did not appear at the trial that the defendant had anything to do with the portion erected on Richmond's land, or that Richmond had anything to do with the portion erected on the defendant's land.

The building thus constructed by Richmond and the defendant respectively was about six feet higher than the eastern wall of Templar Hall, and the wall was raised to that extent by both the defendant and Richmond, under their contracts. To carry off the water that would fall on the space covered by that side of the roof of Templar Hall, the defendant constructed against

his twenty feet, and Richmond against the land owned by him, over the original slate roof of Templar Hall, a tin roof which sloped from the ridge of the hall to the new building. It was so constructed that the water falling on the tin roof, together with a portion of the water falling on both Richmond's and the defendant's parts of the new building, should be carried into a conducting pipe, and from that into the defendant's building, to be used there.

The plaintiff contended that the pipe was insufficient for the purpose, and that the water was discharged over the south end of the new roof against Richmond's part of the new building, and through imperfections in the south end of the new roof, between the old and new roof, there was a leakage into Templar Hall. And he asked a witness, " How was the south end (which was Richmond's part) of the addition in the roof of Templar Hall Building closed up ? " This question was properly excluded; and the presiding judge rightly ruled that if the defendant had properly constructed the new roof against his twenty feet, he was not liable for improper construction in the roof against Richmond's part. And, in connection with the claim of the plaintiff that the capacity of the pipe was insufficient, he also properly ruled that the defendant was bound to provide for the discharge of all water falling on the new roof abreast of his part, under all usual circumstances of the climate, but was not so bound to provide for any extraordinary condition of things not be expected in this climate.

Nor do we see any objections to the ruling of the presiding judge that if the construction of the new roof over the old roof was the best method of carrying off the water, the defendant was justified in doing so under his contract. The contract provided for the erection of a new building higher than the eastern wall of Templar Hall, and the raising of the wall, and the defendant stipulated that he would provide " in the most effectual manner, by a gutter, valley, flashing or otherwise, to permanently carry off the water from the roof of the hall, where it abuts against his new building."

Whether the defendant had properly constructed the new roof, and whether that method of carrying off the water was the best method, or as good as any other, was submitted to the jury

under instructions to which no exception was taken; and on those questions the jury found for the defendant.

The plaintiff called a witness, an expert in the business of slate and tin roofing, and among other things asked him what would be the effect of water or rain flooding up on the tin roof, but the judge, on objection by the defendant, excluded the inquiry as being matter of common knowledge, and not a subject for the evidence of experts. It is not necessary to consider the question whether the effect of water or rain flooding on a tin roof is a subject matter for the testimony of an expert. The portion of the tin roof which was affected by the flooding, and which admitted the water through imperfections in its construction, was not against the defendant's part of the building; and no claim is made that the roof leaked where it abutted on the defendant's part. The testimony, therefore, of the expert became immaterial, as it related to the action of water on that part of the roof abutting on Richmond's land, for the improper construction of which the defendant was not responsible.

It was clearly incompetent for the plaintiff, under his counts in tort, to show acts of the defendant "in respect to the portion of the new roof abreast of the land of Richmond," as he asserted the right to do. He had averred that the counts in tort and contract were for one and the same cause of action; otherwise they could not be joined. Gen. Sts. c. 129, § 2, cl. 5. As the count in contract can only apply to acts done or omitted in regard to that portion of Templar Hall abutting on the plaintiff's land, the count in tort is also limited to the same portion. When the plaintiff attempts to prove a tort not within that limit, he shows another cause of action, different from that set up in the count in contract.                    *Exceptions overruled.*